SCHOTT, Judge.
Plaintiff has appealed from a dismissal of her suit for workers’ compensation benefits beyond the two month period in which she was paid benefits by her employer. The issue is whether the trial court’s conclusion is supported by the record.
Plaintiff, employed as a welder, was injured on July 25, 1978, when a “come along” fell on her back. She reported to the employer’s first aid station for treatment, returned to work about a half hour later, and continued working for about two more hours. The next day she worked ten hours. Supervisory personnel testified that she manifested no injury at this time.
On the second evening following her accident plaintiff sought treatment at a hospital in Franklin and on July 28 consulted her physician, Dr. Vela. He found spasm in her right lumbar spine, treated her with medication and heat applications, and, on August 18, referred her to a neurosurgeon, Dr. John D. Jackson.
On September 5 she was examined by Dr. P. H. Rhymes, an orthopedist, at the employer’s behest. He found objective evidence of muscle damage to the lumbar back and prescribed medication and a brace. When he last saw her on September 13 she was still having objective symptoms and was not cleared for work. She was told to return in ten days but did not.
On September 25, 1978, plaintiff was examined by Dr. Jackson. Based on his examination, particularly his finding that the Achilles reflexes were decreased bilaterally, he felt that she had a bulging disc or a contused nerve root. He saw her again on October 16 and because she continued to have numbness and pain in both feet he felt that she should be hospitalized for conservative treatment.
Defendant’s claims examiner for its workers’ compensation department testified that she discontinued compensation payments on September 27 based on the report from Drs. Rhymes and Soboloff that plaintiff was no longer disabled. However, plaintiff was not seen by Dr. Soboloff until November 6.
Dr. Soboloff, an orthopedist, after exam-. ining plaintiff found no objective symptoms and he concluded his report to defendant with the following:
“... We therefore, see nothing of an orthopedic nature that would indicate a need for continued orthopedic treatment and no contra-indication to her return to a regular work status. If there is doubt about her having any pressure on the nerve root, then we would suggest an *396 EMG for the right lower extremity to see if there truly is any nerve root irritation.”
However, in his testimony Dr. Soboloff made the following statement:
“... And I came to the conclusion that there were no objective orthopedic findings but because of the persistence of her complaints I felt she should have the benefits of an EMG, an electrical test, and see if there was any evidence of nerve root irritation.”
When asked if the EMG study was performed on plaintiff, Dr. Soboloff testified that one was performed at Charity Hospital in May, 1980, and it revealed no abnormalities. Defendant sent plaintiff to Dr. William A. Martin, a neurosurgeon, who conducted electro-myogram diagnostic studies on her in December, 1978. This revealed intermittent muscle spasm activity in her paraspinous muscle. Although he reported to defendant that the studies were normal, with no evidence of radiculopathy, neuropa-thy or myopathy, he testified that such a muscle spasm “usually indicates there has been a strain or some other condition causing the muscles to be in spasm and tighten up.”
Dr. Soboloff, when asked what his recommendation to plaintiff would have been, had he been aware of the objective finding of muscle spasm by Dr. Martin, replied that he would not have allowed her to return to work but would have recommended a period of some three months of physical therapy and medication.
Dr. Jackson saw plaintiff again on February 8, 1979, and July 2, 1979. He was convinced that plaintiff had a bulging disc and recommended that a myelogram be performed followed by a discogram in the event that the myelogram was negative. He was quite adamant in his testimony that plaintiff was in need of this further testing and faulted defendant for not providing it. However, on November 13, 1979, a myelo-gram was performed on plaintiff at Charity Hospital and the neurosurgeon reported that there was no ruptured lumbar disc and no objective signs to substantiate plaintiff’s claim of back pain.
Plaintiff would have us conclude that she is entitled to compensation benefits for total permanent disability based primarily on her own testimony and that of Dr. Jackson. Apparently the trial judge did not believe plaintiff whose credibility was severely damaged when she admitted having been convicted of stabbing her sister to death ten years previously and injuring her back in that altercation after she initially denied previous convictions or back trouble. Furthermore, she applied for a job with a company nine days after her accident on July 25 and in her employment application she stated that she had no previous accidents or injuries to her back. As for Dr. Jackson, the trial judge apparently assigned little weight to his testimony, and this conclusion is supported by the doctor’s deposition which is in the record. It reveals that Dr. Jackson was far from an objective medical expert but he behaved more like an advocate for plaintiff’s position as he argued her case throughout and was highly critical of defendant’s handling of her claim.
Nevertheless, even though we reject plaintiff’s testimony as incredible and accept the trial judge’s negative evaluation of Dr. Jackson’s testimony, we are constrained to amend the judgment because of the testimony of Doctors Soboloff and Martin. These were defendant’s witnesses and it is clear from their testimony that as of December 6, 1978, when Dr. Martin performed his electromyogram plaintiff was still disabled and, according to Dr. Soboloff, should have been provided with physical therapy and medication over a three-month period, during which he would expect plaintiff’s symptoms to subside. Plaintiff’s lack of credibility does not serve to preclude her from compensation benefits because defendant, by paying her compensation benefits and medical expenses for 60 days, acknowledged that she was hurt on the job and was disabled for at least that period of time. Defendant declined to pay further benefits because of the reports it had from Doctors Rhymes, Soboloff and Martin. While the reports from Doctors Soboloff and Martin supported defendant’s decision *397 their combined testimony made it clear that their reports were incomplete and misleading and that plaintiff was indeed still disabled as of December 6.
It is likewise clear from the record that the trial judge did not attach any significance to Dr. Martin’s finding of muscle spasm on December 6, 1978, because of plaintiff’s admission that some three weeks previously, i.e., between the date she saw Dr. Soboloff and the date the electromyo-gram was conducted she was in an automobile accident, in which she sustained a fractured clavicle, three broken ribs, and injury to her cervical spine. The trial judge apparently concluded as a fact that the muscle spasm found by Dr. Martin was attributed to this automobile accident rather than the work accident sued on. The question is whether this finding was manifestly erroneous.
The physicians who were asked hypothetically whether such an accident could have caused damage to the lumbar spine were quite vague in their replies, stating in effect that it depended on which ribs were broken but acknowledged that the trauma which produced such severe results could have produced damage to the low back as well. We have concluded that the trial judge was clearly wrong in his conclusion for two reasons. First, the clear inference from the little testimony in the record concerning the automobile accident is that plaintiff’s injuries from this accident were to the top of her cervical spine in the vicinity of the clavicle and that the broken ribs were likewise in this area of her body. However, more important is the law that the burden of proof that plaintiff’s muscle spasm in her low back was attributed to this intervening cause was on defendant and not on plaintiff. Adams v. New Orleans Public Service, Inc., 418 So.2d 485 (La.1981), Clofer v. Pratt-Farnsworth, Inc., 407 So.2d 1295 (La.App. 4th Cir. 1982). Defendant’s failure to produce medical reports concerning the automobile accident which might have connected the accident with the spasm in her low back precludes it from exoneration from liability based on the theory of an intervening cause. Thus, the trial court erred in reaching the conclusion that plaintiff’s back condition as of December 6 was not caused by her on the job accident of July 25.
Because of our conclusion that the trial judge properly rejected the testimony of plaintiff as well as Dr. Jackson, but failed to properly consider the testimony of Doctors Soboloff and Martin, we have concluded that plaintiff is entitled to the workers’ compensation benefits for temporary total disability until Dr. Soboloff’s hypothetical three month period of treatment which would have ended on March 6, 1979.
The only remaining issue is plaintiff’s claim for penalties and attorney fees against defendant. We are convinced that she is not entitled to this relief because defendant was justified in relying upon the reports it had from Doctors Rhymes, Sobo-loff and Martin, and was equally justified in disbelieving the reports of Dr. Jackson.
Accordingly, the judgment appealed from is reversed and set aside and there is judgment in favor of plaintiff, Arlene Lightfoot, and against defendant, J. Ray McDermott & Company, awarding her workers’ compensation benefits in the amount of $151.34 per week from September 27, 1978, until March 6, 1979, with legal interest on each payment from due date until paid, and for all costs.
REVERSED AND RENDERED.